*********** EVIDENTIARY MATTERS
Subsequent to the hearing before the Deputy Commissioner, with the timing of submission having been approved by Deputy Commissioner Houser, defendants submitted a packet of plaintiff's DMV and Criminal History that had been redacted, which was admitted into the record over plaintiff's objection, and marked as Defendants' Exhibit (1).
At the hearing before the Deputy Commissioner, the parties submitted a packet of stipulated documents that included medical records, an Industrial Commission Form 90, a report of compensation paid to plaintiff, an Employment Security Commission printout, a claim search and Plaintiff's Answers to Defendants' Interrogatories, all of which was admitted into the record, and marked as Stipulated Exhibit (1).
 ***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Houser and the brief and argument before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence or to amend the prior Opinion and Award. The Full Commission therefore affirms the Opinion and Award of the Deputy Commissioner with minor modifications. The Commission had served pro se plaintiff with a copy of the hearing docket for oral argument before the Full Commission by certified mail return receipt requested. The return receipt showed that plaintiff received the hearing docket on March 3, 2005, which was ample time for him to prepare an oral argument. However, plaintiff did not serve a Form 44, did not file a brief and did not attend oral argument before the Full Commission. Defendants moved to dismiss plaintiffs appeal on several grounds, including the fact that the appeal was not timely filed. Defendants' motion is well grounded and is hereby APPROVED.
 ***********
Based upon the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. On July 27, 2000 the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At such time, an employment relationship existed between plaintiff and defendant-employer.
3. On 27 July 2000, Fairmont Insurance Company/TIG Specialty was the carrier on the risk for defendant-employer.
4. All parties have been correctly designated, and there is no question as to misjoinder of the parties.
5. Defendant-employer does not currently employ plaintiff.
6. At the time of the hearing before the Deputy Commissioner, plaintiff was 45 years old. Plaintiff is a high school graduate, completed four (4) years of college and several IT courses.
7. This matter arises from an admittedly compensable injury by accident that occurred on July 27, 2000. On that date, plaintiff experienced pain to his lower back. There is a dispute as to the extent of said injury and any resulting disability.
8. Following his injury by accident, plaintiff initially sought treatment from Dr. Qhulam Shaikh of Doctor's Urgent Care Centre, and was diagnosed with back strain. X-rays taken revealed no fracture and Dr. Shaikh released plaintiff to return to light duty work. Plaintiff continued to receive treatment from Dr. Shaikh until on or about August 4, 2000. The exact date upon which the treatment ended cannot be determined because Dr. Shaikh's records are partially illegible.
9. On August 18, 2000, plaintiff was referred to Dr. Catherine Lawrence of the Carolina Back Institute. Following an examination, Dr. Lawrence ordered physical therapy and prescribed Motrin and Skelaxin. On September 5, 2000, plaintiff was released to return to a job, the description of which had been approved by Dr. Lawrence.
10. On September 19, 2000, plaintiff returned to Dr. Lawrence, who ordered an MRI and a psychological evaluation. The MRI revealed diffuse disc findings at the L5-S1 level without stenosis, a tiny meniscal central HNP at the L5-S1 level and an L3-L4 broad left lateral protrusion, mildly narrowing the neural foramen. Later, in January 2001, an epidural steroid injection ordered by Dr. Lawrence was administered. Since that time, plaintiff has not sought any additional treatment from Dr. Lawrence, who was the authorized treating physician.
11. On April 19, 2001, plaintiff sustained a work-place injury while working for BTI-Telecom. At the time of this injury, defendants were unaware that plaintiff had returned to work and were paying him indemnity compensation. At the hearing, plaintiff testified that the April 19, 2001 incident resulted in an injury to and pain in his back.
12. On April 23, 2001, plaintiff was examined by Dr. Robert Wilson of Triangle Orthopaedics. In medical records from the date of this initial examination Dr. Wilson notes that plaintiff had sustained a back injury while lifting heavy boxes at work in July 2000. Dr. Wilson further notes what the prior MRI and other evaluations revealed. However, from this initial appointment, Dr. Wilson was able to determine that there were significant psychological factors that were hindering plaintiff's physical functions and that he displayed symptom magnification. Dr. Wilson continued to see plaintiff for some time with many appointments being missed by plaintiff without any explanation.
13. On April 23, 2001, plaintiff underwent a functional capacity evaluation with Physical Therapist Kimberly Edgeworth. Although plaintiff sustained the subsequent April 19, 2001 workers' compensation injury, the functional capacity evaluation notes a date of injury as being July 2000. Following the evaluation, which noted symptom magnification, Ms. Edgeworth opined that plaintiff was capable of performing light duty work.
14. On August 16, 2001, plaintiff presented to Dr. Kyle Black of Triangle Orthopaedics. To Dr. Black, plaintiff reported experiencing pain, denied the ability to work and reported that his symptoms began one year previous. Dr. Black diagnosed plaintiff as having lumbar degenerative disc disease and status-post lumbosacral strain. Dr. Black suggested a referral to a pain management program. Additionally, Dr. Black released plaintiff to return to a light duty job which he approved after reviewing a job description. However, plaintiff did not return to work for defendant-employer.
15. On October 29, 2001, plaintiff returned to Dr. Wilson complaining of persistent pain. Dr. Wilson ordered further diagnostic testing, specifically a lumbar discogram of the L2-L3 level to the L5-S1 level. The test was scheduled for 18 December 2001, but plaintiff did not report for that appointment.
16. On March 2, 2002, Dr. Wilson opined that plaintiff had reached maximum medical improvement and assigned an eight percent (8%) permanent partial disability rating to the back.
17. Following his July 20, 2000 injury by accident and the then unknown April 19, 2001 work-place injury, defendants paid to plaintiff total disability compensation at the rate of $266.68 per week for the period of August 4, 2000 through November 30, 2001.
18. The PMA Insurance Company paid medical and indemnity benefits relating to plaintiff's April 19, 2001 work-place injury. Because plaintiff did not disclose to defendants information concerning his return to work for BTI-Telecom and the additional injury to his back, defendants in this case paid indemnity benefits to plaintiff on and subsequent to April 19, 2001.
19. On June 6, 2002, defendants paid to plaintiff permanent partial disability compensation in the amount of $6,400.32 for the eight percent (8%) rating to his back.
20. According to an Industrial Commission Form 90 prepared by plaintiff, plaintiff earned approximately $19,000.00 in wages while collecting total disability benefits from defendants.
21. Based upon the credible evidence of record, including Employment Security Commission records, plaintiff collected unemployment benefits while also receiving total disability benefits from defendants.
22. Based upon the credible evidence of record, including plaintiff's discovery responses, he was employed in various jobs after leaving defendant-employer and while he was collecting workers compensation benefits from both the defendant-carrier in this case and from the PMA insurance company involved in the April 19, 2001 claim. This constitutes fraud for which plaintiff should be prosecuted. Accordingly, this matter is hereby referred to the Industrial Commission's fraud investigators.
23. When questioned regarding his post-injury earnings, plaintiff testified that he filed tax returns for the years in question, 2001, 2002 and 2003. Plaintiff further testified that he would document his earnings. In fact, based upon the credible evidence of record, plaintiff filed no tax returns, even though he was working and earning wages. Plaintiff's testimony to the contrary is not accepted as credible. Additionally, plaintiff is the subject of an investigation by the Employment Security Commission for providing false information and collecting unemployment benefits while collecting total disability benefits under workers' compensation.
24. Plaintiff has been involved in numerous incidents some of which he filed civil and workers compensation claims both before and after the injury giving rise to this claim. At the hearing, plaintiff did not provide specific and relevant information regarding all of these claims. Plaintiff had a personal injury claim arising from an automobile accident on June 16, 1999 and which involved injuries to his left shoulder and neck. Plaintiff had a general liability claim against Food Lion arising from an incident occurring on December 30, 1999 and which involved injuries to his right hip and right lower back. Plaintiff filed a general liability claim against Target stores involving unknown injuries arising from an incident on June 23, 2000. In December 2000, plaintiff was involved in a motor vehicle accident that allegedly resulted in an injury to his back. There is also plaintiff's workers' compensation claim relating to his April 19, 2001 injury while working for BTI-Telecom which was insured by PMA. Plaintiff filed another general liability claim arising from an incident occurring on August 25, 2001, and for which further details are unknown. Plaintiff had a personal injury claim relating to an October 2001 automobile accident which allegedly resulted in injuries to his left knee and cervical spine. Another personal injury claim was filed by plaintiff arising from an October 20, 2001, automobile accident and which allegedly resulted in a sprain to an unknown part of his body and injuries to his knees and neck.
25. Based upon the credible evidence of record, subsequent to July 2000, plaintiff has been involved in multiple incidents resulting in injuries to his back.
26. On July 27, 2001, defendants filed a Motion to Compel Medical Treatment, which was granted on September 24, 2001.
27. Defendants filed an Industrial Commission Form 24 Application to Terminate or Suspend Payment of Compensation, which was approved on October 29, 2001, due to plaintiff's continued failure to comply with medical treatment and refusal to accept a physician approved light duty position with defendant-employer.
28. Plaintiff resumed medical treatment in April 2001 with Dr. Wilson without seeking prior authorization from defendants or timely approval by the Industrial Commission. This occurred after plaintiff's December 2000 motor vehicle accident and after his April 19, 2001 injury, both of which plaintiff testified resulted in an injury to and pain in his back.
29. On August 27, 2002, plaintiff filed an Industrial Commission Form 18M seeking approval for a discogram and CT scan, which was recommended by Dr. Wilson. Related to this Form 18M, plaintiff asserted that he experienced back pain since July 27, 2000 and had been treating with Triangle Orthopaedics. Plaintiff further testified that his pain was disabling and rendered him incapacitated for days, despite the credible evidence of record that he returned to work subsequent to his July 27, 2000 injury.
30. The Industrial Commission Form 18M was denied, and plaintiff appealed its denial. Dr. Lawrence could not opine with any degree of medical certainty as to whether plaintiff's ongoing complaints are related to the injury of July 27, 2000 or any of his numerous other injuries.
31. Based upon the credible evidence of record, plaintiff has reached maximum medical improvement from his July 27, 2000 injury by accident. Further, plaintiff has received all the benefits due to him, including his permanent partial disability rating. In fact, defendants overpaid temporary total disability benefits in this case for those weeks following plaintiff's return to work prior to April 2001.
32. Plaintiff's testimony regarding any ongoing medical problems and disability resulting from his July 27, 2000 injury is not accepted as credible.
33. Based upon the credible evidence of record, any ongoing medical problems and disability plaintiff may have are not related to his July 27, 2000 injury by accident.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. On July 27, 2000, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff has reached maximum medical improvement from his injury of July 27, 2000 and retains an 8% permanent partial disability to his back, for which he has been compensated by defendants. N.C. Gen. Stat. § 97-31.
3. Any disability or inability to earn wages which plaintiff may now have was not caused by and is not related to his July 27, 2000 injury by accident. N.C. Gen. Stat. § 97-2(9).
4. Any medical problems for which plaintiff now seeks treatment were not caused by and are not related to his July 27, 2000 injury by accident. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for additional benefits must under the law be, and is hereby, DENIED.
2. Each side shall pay its own costs.
This 16th day of June 2005.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_________________ PAMELA THORPE YOUNG COMMISSIONER